**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DANIEL GONZALES SANCHEZ, ) | |
| ID # 1288875, ) | |
|     Petitioner, ) | |
| vs. ) | No. 3:08-CV-00845-K-BH |
| ) | |
| NATHANIEL QUARTERMAN, Director, ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
|     Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

**I. BACKGROUND**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 to challenge his Dallas County conviction for indecency with a child (Cause No. F04-34184-VI). Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**A. Factual and Procedural History**

In January 2004, petitioner was indicted for indecency with a child. Clerk's Record (CR) at 2. The indictment specifically charged that on or about September 7, 2001, petitioner unlawfully, intentionally, and knowingly engaged in sexual contact with a child (K.B.) younger than seventeen years of age by touching her vagina with his hand with the intent to arouse and gratify his sexual desire. *Id.* It also set out two prior felony convictions for habitual offender purposes (Cause No. F92-45878-UU (indecency with a child) and F79-01881-RR (impersonating a peace officer). *Id.*

K.B. testified that petitioner touched her vagina over her clothes with his finger when she

was eight years old. *See* Rep.'s R., Vol. 3 at 46 [hereinafter cited as RR-volume # at page]. At that time, petitioner was living and having a relationship with K.B.'s grandmother. *Id.* at 50; 199-200. K.B. testified that she, her mother, and brothers were heading home when their car began to overheat near her grandmother's house. *See id.* at 48-49. The mother called the grandmother, spoke to her sister (K.B's Aunt Rachel), and decided to go there for water. *Id.* at 49. When they arrived, Aunt Rachel was on the phone; petitioner also arrived soon thereafter. *Id.* at 54-55. The mother told the children to stay in the car while she got the water. *Id.* After the mother went inside, petitioner convinced K.B.'s younger brothers to go inside for a drink. *Id.* at 57-58. Petitioner then came to K.B.'s door to give her a hug but instead touched her inappropriately. *Id.* at 59-60. He rubbed K.B.'s vagina for a few seconds, and stopped because he heard her mother returning. *Id.* at 47, 56-62. After leaving her grandmother's house, she made an outcry to her mother. *Id.* at 63-64. The mother confirmed the outcry and testified that petitioner had made up a false reason for having the car door open and looked as if something was wrong. *Id.* at 209-12.

The trial court also allowed the State to played a video-taped interview of K.B. over defense counsel's objections. *See* RR-4 at 6-9 (hearing outside presence of jury); 33 (video offered, admitted, and played to the jury).

Two witnesses testified on petitioner's behalf. Aunt Rachel testified that she did not remember anything about her sister calling or coming by the house after her car overheated. RR-4 at 104-06. An investigator for the Dallas County Public Defender's Office testified that K.B. refused to be interviewed, and he could not locate her grandmother. *Id.* at 108-12. He located Aunt Rachel and an Aunt Sue with whom K.B. lived for awhile but was unable to subpoena Aunt Sue to testify. *Id.* at 113-16. During the investigator's testimony, the trial court sustained objections to

2

testimony about specific acts of K.B. and her reputation for truthfulness. *Id.* at 114-15.

On February 3, 2006, a jury found petitioner guilty of indecency with a child. *See id.* at 168. At punishment, the State presented evidence of petitioner's criminal history through multiple pen packets and testimony from a fingerprint expert and K.B.'s grandmother. *See* RR-5 at 16-68. The jury assessed punishment at life imprisonment. *Id.* at 93.

On July 19, 2006, the court of appeals affirmed his conviction after modifying the judgment for back-time credit. *Sanchez v. State*, No. 05-05-00444-CR, 2006 WL 2005496, at *1 (Tex. App. – Dallas July 19, 2006, pet. ref'd). The Court of Criminal Appeals refused his petition for discretionary review (PDR) on April 4, 2007. S.H.R.[1] at 71. The appellate court issued its mandate on June 26, 2007. *Id.* at 71. Prior to the issuance of the mandate, on May 30, 2007, petitioner filed a state application for writ of habeas corpus. *Id.* at 2. The Court of Criminal Appeals dismissed the application because petitioner's appeal was still pending. *Ex parte Sanchez*, No. 25,912-10, unpub. op. at 1 (Tex. Crim. App. Apr. 23, 2008).

**B. Substantive Claims**

In May 2008, petitioner filed his petition for federal habeas relief and a supporting memorandum. (*See* Pet. Writ of Habeas Corpus (Pet.) at 1; Mem. at 1.) He asserts that (1) his due process rights were violated; (2) he received ineffective assistance of trial counsel; (3) he was deprived of his right to confront the witnesses against him; and (4) the evidence is factually insufficient to support his conviction. (Pet. at 7-8.) Respondent responded that Claims 1, 2, and 4 are unexhausted; Claim 4 is not cognizable in this federal habeas action, and that Claims 1, 2, and 3 lack merit. (*See* Resp.'s Answer (Answer) at 1, 5-6, 15-16.) Petitioner objected to the answer.

---

[1] "S.H.R." denotes the state habeas records identified by respondent with Event ID # 2325528. .

3

(Objection at 1-2.)

## II.  NON-COGNIZABLE CLAIM

Respondent asserts that Petitioner's claim that the evidence is factually insufficient to support his conviction (claim 4) is not cognizable in a federal habeas action.  (Answer at 16.)

Pursuant to the Texas Constitution and statutory authority, Texas appellate courts conduct factual sufficiency reviews of the evidence.  *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *7 (N.D. Tex. Nov. 12, 2004) (recommendation of Mag. J. citing *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996)), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).  While Texas has utilized the more exacting factual sufficiency standard, this standard does not implicate federal constitutional concerns.  *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002).  Claims of factual insufficiency are "not cognizable on federal habeas review."  *Spencer v. Dretke*, No. 3:02-CV-1988-D, 2005 WL 696719, at *4 n.2 (N.D. Tex. Mar. 23, 2005) (recommendation of Mag. J.), *accepted by* 2005 WL 955969 (N.D. Tex. Apr. 26, 2005).  This claim provides no basis for habeas relief in this action.

## III.  EXHAUSTION

Respondent also asserts that petitioner has not exhausted his first and second claims.  (Answer at 5-6.)

A petitioner must fully exhaust state remedies before seeking federal habeas relief.  28 U.S.C. § 2254(b).  To exhaust in accordance with § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court.  *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993).  In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review or

an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986). To exhaust in accordance with § 2254, a petitioner must fairly present all claims to the state courts prior to raising them in federal court. *Deters*, 985 F.2d at 795.

In this case, petitioner improperly filed his state application for writ of habeas corpus by submitting it before the appellate court issued its mandate. *See Larry v. Dretke*, 361 F.3d 890, 895 (5th Cir. 2004) (holding that a state application for writ of habeas corpus that is erroneously accepted by a court which lacks jurisdiction over the writ is not properly filed); *Ex parte Johnson*, 12 S.W.3d 472, 473 (Tex. Crim. App. 2000) (holding that the Texas Court of Criminal Appeals has no jurisdiction over a state writ until the direct appeal is final by issuance of mandate). Consequently, that application presented no claim to the Court of Criminal Appeals and did not exhaust petitioner's state remedies. *Carter v. Quarterman*, No. 3:04-CV-0649-N-BH, 2006 WL 2946720, at *12 (N.D. Tex. Sept. 22, 2006) (recommendation of Mag. J.), *accepted by* unpub. op. (N.D. Tex. Oct. 12, 2006). Furthermore, although petitioner asserted several grounds in his direct appeal, *see Sanchez*, 2006 WL 2005496, at *1-8 (setting out seven points of error), he presented only his confrontation claim to the Court of Criminal Appeals, *see* PDR (found in the state court records). Except for the confrontation claim, the Court of Criminal Appeals has had no opportunity to consider the claims raised by petitioner in this federal petition.

Because petitioner has failed to exhaust his state remedies with respect to Claims 1 and 2, he is not entitled to habeas corpus relief on those claims. Notwithstanding such failure, however, the Court may also deny the "writ of habeas corpus . . . on the merits." *See* 28 U.S.C. § 2254(b)(2).

## IV. APPLICABLE LAW

Congress enacted AEDPA on April 24, 1996. Title I of the Act applies to all federal peti-

5

tions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies in this case.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). Consequently, these AEDPA standards apply only to petitioner's claims addressed on the merits in the state appellate process.

The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption "applies to explicit findings of fact and to 'those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" *Williams v. Quarterman*, 551 F.3d 352, 358 (5th Cir. 2008) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

## V. TRIAL COURT ERROR – RIGHT OF CONFRONTATION

Petitioner alleges that the trial court violated his right to confront witnesses presented against him by limiting cross-examination of K.B.'s mother and excluding evidence that could impeach her

6

testimony, including a pending probation violation, a child abuse investigation, and a warrant for drug possession.  (Pet. at 7 (Claim 3); Mem. at 3, 6-12.)

Petitioner pursued a confrontation claim on direct appeal.  *See Sanchez*, 2006 WL 2005496, at *2-3.  The appellate court concluded that "[e]ven if the trial court erred . . . any error" in limiting the cross-examination was harmless.  *Id.* at *2.  It found the mother's testimony "helpful, but not crucial, to the State's case" and except for the testimony regarding to the false reason for having the car door open (tying K.B.'s shoe), the testimony was "essentially cumulative of K.B.'s testimony". *Id.* at *3.  It recognized that "[t]he State's case hinged on the testimony of K.B., who steadfastly maintained that [petitioner] had molested her, despite the failure of the adults around her to contact police."  *Id.*

The trial court's evidentiary rulings are matters of state law which are not subject to re-examination by the federal courts.  It is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "[A] federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair."  *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).

In this case, petitioner claims that certain evidentiary rulings of the trial court violated his constitutional right to confront the witnesses presented against him.  "The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

7

witnesses against him.'" *Idaho v. Wright*, 497 U.S. 805, 813 (1990). Criminal defendants receive two valuable protections from the Confrontation Clause – the right to physically face those who testify against them and the right to cross-examine those witnesses. *Coy v. Iowa*, 487 U.S. 1012, 1016-17 (1988). These protections are fundamental requirements for a fair trial. *Pointer v. Texas*, 380 U.S. 400, 405 (1965). "It is axiomatic that defense counsel should be permitted to expose to the jury facts relative to a witness' possible motivation to testify favorably for the prosecution or his potential bias for or against any party to the criminal proceeding." *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).

The Confrontation Clause does not, however, grant defense attorneys unbridled authority to cross-examine witnesses on whatever topic they or their clients deem suitable. Trial judges retain the discretion to impose reasonable limits on cross-examination consistent with the applicable rules of evidence.

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. . . . "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)) (emphasis in original).

Petitioner complains of limitations and restrictions on his cross-examination of K.B.'s mother rather than being unable to physically face those who testified against him.[2] "A complaint

---

[2] In his supporting memorandum, petitioner complains about the admission of the video-taped interview with K.B. in various contexts, including a confrontation violation. (*See* Mem. at 19-20.) Because K.B. testified at trial, the introduction of the video tape did not violate his right to confrontation.

8

that the trial court unduly restricted cross-examination of a state's witness is a mixed question of fact and law, and on federal habeas review is subject to harmless error analysis under *Brecht v. Abrahamson*[, 507 U.S. 619 (1993)]." *Rosales v. Cockrell*, 220 F. Supp. 2d 593, 625 (N.D. Tex. 2001), *aff'd* No. 01-11388, 2002 WL 31016510 (5th Cir. Aug. 16, 2002). A petitioner is entitled to relief on an alleged confrontation violation only if he shows that the trial court in fact violated his right to confrontation and that "there is more than a mere reasonable possibility that the [error] contributed to the verdict." *Id.* (citations and internal quotation marks omitted). A trial error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (citation omitted).

Petitioner has not shown that the alleged erroneous evidentiary rulings were harmful. His confrontation claim relates to testimony of K.B.'s mother, a minor witness in the accusation against him. There is no reasonable possibility that the limitations imposed by the trial court contributed to the verdict. This case hinged on the credibility of the victim, not her mother. Petitioner has not shown that the alleged trial errors had a substantial or injurious effect or influence on the verdict. This claim fails to entitle petitioner to habeas relief.[3]

In addition, petitioner has not shown that the decision to deny relief at the state level is inconsistent with applicable Supreme Court precedent or involved an unreasonable application of such precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas

---

[3] In his supporting memorandum, petitioner also indicates that the trial court limited the cross-examination of K.B.'s grandmother. (*See* Mem. at 9.) He did not pursue this claim on direct appeal, and it is unexhausted. In any event, this specific confrontation claim likewise fails for lack of prejudice.

9

relief on his confrontation claim.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner also alleges that he is held unlawfully because his trial attorney rendered ineffective assistance. (*See* Pet. at 7 (Claim 2).)

The Sixth Amendment provides criminal defendants a right to effective assistance of counsel during trial. U.S. Const., art. VI. To successfully state a claim of ineffective assistance of counsel under existing Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Strickland*, 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, *Strickland*'s prejudice component focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and

10

internal quotation marks omitted).  When the deficient performance occurs in a non-capital, state sentencing context, "a court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993); *see also United States v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2004) (holding that *Spriggs* survived *Glover v. United States*, 531 U.S. 198 (2001) in the § 2254 context).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.

Petitioner asserts that his attorney rendered ineffective assistance when he (1) stated during voir dire that he was court-appointed rather than retained; (2) failed to point out the importance of Aunt Sue's knowledge of K.B.'s behavior and propensity for lying by presenting sworn testimony or agreed fact that her testimony would be favorable to him; (3) failed to seek a mistrial in the absence of testimony from Aunt Sue; (4) failed to object to and move to suppress the video interview of K.B.; and (5) allowed extraneous offenses to be admitted at trial.[4]  (Pet. at 7; Mem. at 2, 14-15, 18-19.)

Despite his allegations, petitioner has shown no prejudice.  He has shown no reasonable probability that but for the alleged deficiencies the outcome of his trial would have differed or that he would have received a less harsh sentence.  He presents nothing to show that his trial or sentencing was unreliable or fundamentally unfair.  As for the allegations concerning Aunt Sue, counsel adequately conveyed the importance of her knowledge and testimony since he was unable

---

[4] Although petitioner mentions the admission of extraneous offenses in the context of due process (*see* Pet. at 7), he at times considers due process interchangeably with ineffective assistance, (*see* Mem. at 1-2).  The allegation is more appropriately considered in the context of ineffective assistance of counsel.

11

to secure her presence. Counsel tried to present her testimony through the investigator. Because petitioner concedes that Aunt Sue refused to testify at trial (*see* Mem. at 15), he fails to show how counsel could have presented any other relevant sworn testimony regarding her testimony. He also does not show how counsel could have obtained a stipulation that her testimony would be favorable to him. The prosecution asserted objections to the investigator's testimony that were sustained by the trial court. The objections show that the prosecutor had no inclination to stipulate that Aunt Sue's testimony was favorable to petitioner. It appears that defense counsel did all he could do to present Aunt Sue's testimony. Any further effort to highlight the testimony was unnecessary.

As for the failure to request a mistrial, petitioner must show a reasonable probability that the trial court would have granted the request had it been made. *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1996 (2009). Nothing of record shows that the trial court would have granted a request for mistrial had counsel made it.

Petitioner's second claim does not entitle him to federal habeas relief.

### VII.  DUE PROCESS

Petitioner complains that his due process rights were violated when his attorney stated that he was court-appointed and allowed the introduction of the video interview and extraneous offenses. (Pet. at 7 (Claim 1).) In his supporting memorandum, he appears to state a vague *Brady*[5] violation. (Mem. at 4.)[6]

---

[5]  *Brady v. Maryland*, 373 U.S. 83 (1963).

[6]  Except for the *Brady* claim, petitioner's due process claims duplicate his ineffective assistance of counsel claims. In fact, petitioner appears to equate due process with ineffective assistance of counsel. (*See* Mem. at 1-2.) The prejudice prong of *Strickland* is essentially a restatement of a generic due process violation. Generic violations of due process require federal habeas courts to determine whether the alleged conduct rendered petitioner's trial or sentencing fundamentally unfair. *Payne v. Tennessee*, 501 U.S. 808, 831 (O'Connor, J., concurring) (sentencing errors); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (prosecutorial misconduct); *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997) (trial court error). A proceeding is fundamentally unfair if there is a reasonable probability that its outcome might

In accordance with *Brady*, a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. 373 U.S. at 87. "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). A "true *Brady* violation" has three components: (1) evidence favorable to the accused either because it is exculpatory or impeaching; (2) willful or inadvertent suppression of that evidence by the State; and (3) resulting prejudice to the accused. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed. *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). In other words, there must be "a 'significant possibility' of a different result to characterize the *Brady* materiality standard." *Strickler*, 527 U.S. at 300 (Souter, J., concurring).

In this case, petitioner does not assert a true *Brady* violation. He complains about alleged non-disclosed impeachment evidence that the prosecution objected to at trial. (*See* Mem. at 4.) The fact that the prosecution objected to it at trial indicates that petitioner had access to the evidence. There is no suppression of evidence merely because the prosecution successfully prevents the jury from hearing alleged favorable evidence through trial objection.

---

have been different had the proceeding been properly conducted. *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992). These claims therefore fail for the same reasons as his ineffective assistance claims and need not be addressed anew.

Petitioner, moreover, states that the evidence would have assisted in cross-examining his ex-wife. (*See id.* at 7-8.) Because her testimony was of limited materiality to his conviction, petitioner has shown no reasonable probability of a different outcome at trial had he been able to cross-examine her with the alleged suppressed evidence. The alleged suppression does not undermine confidence in the verdict. Consequently, even if the Court were to find that the prosecution suppressed the impeachment evidence, petitioner's *Brady* claim fails for lack of prejudice.

For all of these reasons, petitioner's due process claims entitle him to no federal habeas relief.[7]

## VIII. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 29th day of June, 2009.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] Petitioner briefly suggests that the trial court's exclusion of the alleged suppressed evidence violates his due process rights. (Mem. at 2-3.) To the extent he raises a claim of trial court error, the claim also entitles him to no federal habeas relief due to the lack of prejudice.

14

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE